IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Rose Marie Killian, | ) | Civil Action No. 8:12-cv-00921-MGL-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.   Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]   For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 13, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On May 23, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of November 1, 2006.  [R. 115–130.]  The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 56–68.]  On January 25, 2009, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 78-80], and on August 23, 2010, ALJ Frederick W. Christian conducted a de novo hearing on Plaintiff's claims [R. 34–55].

The ALJ issued a decision on August 31, 2010, finding Plaintiff  not disabled  under sections 216(i) and 223(d) of the Social Security Act.  [R. 21–33.][3]   At Step 1,[4] the ALJ found Plaintiff last met the insured status requirements of the Act on September 30, 2010, and that she had not engaged in substantial gainful activity since her alleged onset date of November 1, 2006.  [R. 26, Findings 1 & 2].  At Step 2, the ALJ found Plaintiff had the following medically determinable impairments: diabetes mellitus, hypertension, and chronic kidney disease; however, because these impairments or combination of impairments did not significantly limit, or were not expected to significantly limit, the ability to perform basic work-related activities for 12 consecutive months, the ALJ found Plaintiff did not have a severe impairment or combination of impairments.  [R. 26, Findings 3 & 4.]  Thus, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of November 1, 2006 through the date of the ALJ's decision.  [R. 29, Finding 5.]

_____

[3]It appears the ALJ filed the same decision again on September 1, 2010.  [R. 8–20.]

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined.  [R. 1–5.]  Plaintiff filed this action for judicial review on April 2, 2012. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by:

1.   finding that Plaintiff, who has only one kidney and whose other kidney has Stage III-IV chronic kidney disease, does not have a severe impairment; and

2.   rejecting the opinion of disability of the Plaintiff's treating physician Dr. Dunovant.

[Doc. 19; *see also* Doc. 23 (responding to arguments raised by the Commissioner).]  The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence.  [Doc. 22.]  Specifically, the Commissioner argues the ALJ reasonably found that Plaintiff did not have a severe impairment as that term is defined under the Act because:

1.   the term "severe" impairment has a narrow and specific meaning under the Act;

2.   that Plaintiff has been diagnosed with a chronic disease does not necessarily mean she has a severe impairment under the Act;

3.   Plaintiff did not prove that her chronic kidney disease and other conditions significantly limited her ability to perform basic work activities; and

4.   the ALJ had no obligation to give either controlling weight or great weight to Dr. Dunovant's opinion because it was not well supported and it was inconsistent with other substantial evidence.

[Doc. 22.]

3

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966) (citing Woolridge v. Celebrezze, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

4

for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand

5

was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

6

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

---

[5] Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can

8

find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.     ***Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

B.     ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule,

9

the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior

work, the burden of proof shifts to the Commissioner to establish that the claimant could

perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g),

416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden,

the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

primarily from an exertional impairment, without significant nonexertional factors.[8]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to

perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

("Because we have found that the grids cannot be relied upon to show conclusively that

claimant is not disabled, when the case is remanded it will be incumbent upon the

[Commissioner] to prove by expert vocational testimony that despite the combination of

exertional and nonexertional impairments, the claimant retains the ability to perform

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating

12

physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical

13

source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).

However, the ALJ is responsible for making the ultimate determination about whether a

claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a

claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a

consultative examination is not required when there is sufficient medical evidence to make

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the

regulations, however, the ALJ may determine that a consultative examination or other

medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he

furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling

pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,

723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which

could reasonably be expected to produce . . . the actual pain, in the amount and degree,

14

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

16

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

Here, the appropriate inquiry focuses on the ALJ's determination that Plaintiff did not have a severe impairment. To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 & 146 n.5 (1987) (quoting severity regulation and stating it is the plaintiff's burden to show she has a severe impairment); 20 C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language uses the term "severe," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85–28; *see Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3rd Cir. 2004) (quotation marks and citations omitted). Severity, however, is not the only requirement at Step 2: the

17

impairment must also "meet[] the duration requirement in § 404.1509." 20 C.F.R. § 404.1520(a)(4)(ii); *see id.* § 416.920(a)(4)(ii). "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement." *Id.* §§ 404.1509, 416.909.

When assessing the medical severity of a claimant's impairments, the adjudicator must consider the combined effect of all the claimant's impairments without regard to whether any impairment, if considered separately, would be of sufficient severity.  *Id.* §§ 404.1523, 416.923.  A claim may be denied at Step 2 only if the evidence shows that the claimant's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability to perform basic work activities.  If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. Additionally,

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made.  A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself.  At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.  If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal

18

impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28.

### The ALJ's Assessment of Plaintiff's Impairments

The ALJ found that Plaintiff had medically determinable impairments of diabetes mellitus, hypertension, and chronic kidney disease, but that these impairments imposed no more than minimal work-related limitations. [R. 13–14.] The ALJ reasoned that, while Plaintiff's treating physician, Dr. William A. Dunovant Sr., indicated Plaintiff had a functional capacity of less than a full range of work activities at the sedentary exertional level, his November 2009 opinions were entitled to no weight[9] because they were not supported by his own progress notes and were inconsistent with all medical records of evidence. [R. 14.] After reviewing the record, the ALJ concluded that "claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities." [R. 16.] The ALJ indicated that medical consultants reviewed the records and reached the same conclusion that Plaintiff's impairments were not severe. [R 15.] The ALJ found these opinions consistent with existing medical records and gave them considerable weight for the time periods considered. [R. 15.]

_____

[9]The Court finds the ALJ erred in giving Dr. Dunovant's assessment "no weight." When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. SSR 96-2p. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.

***Evidence of Record***

In the hearing before the ALJ, Plaintiff testified that she cannot work because her back, legs, and feet hurt all the time.  [R. 41.]  Plaintiff testified that she suffers from fatigue and that she has swelling in her feet, hands, and sometimes her face on a daily basis.  [R. 41.]  As a result of taking Lasix for the swelling, Plaintiff suffers from headaches and gets lightheaded.  [R. 41.]  She also suffers from cramps after taking HCTZ for fluid.  [R. 42.]  Plaintiff testified that she's been hospitalized several times since she stopped working as a result of problems with her gall bladder and heart.  [R. 44–45.]  Plaintiff testified that her medication for her heart problems, Lopressor, makes her sleepy.  [R.45.]  Plaintiff also testified that she has problems walking and standing because her feet hurt; and that she can stand at most five minutes at one time.  [R. 45.]  She also testified that she has problems lifting and sitting upright due to problems with her back and neck. [R. 46.]  Plaintiff testified that she does not do any housework and lives with nine people. [R. 47.]

Plaintiff began seeing Dr. Dunovant in 2007.  [R.428.]  Treatment notes indicate Plaintiff had a history of hypertension, renal insufficiency, hyperlipidemia, and proteinuria.  [R. 316.]  Dr. Dunovant's treatment records from September 28, 2009, describe Plaintiff's impairments as severe hyperlipidemia, diabetes, hypertenstion, and mild renal insufficiency.  [R. 461.]  Her left kidney was removed in approximately 1994 or 1995.  [R. 190.]  Plaintiff has been diagnosed with Stage III kidney disease in her right kidney.  [*See, e.g.*, R.192–193, 197–199.]

Dr. Dunovant completed a Residual Functional Capacity Assessment form on November 23, 2009, indicating that Plaintiff can lift/carry less than 10 pounds, cannot lift/carry any weight for 2 hours per 8 hour day, can stand/walk 2-3 hours per day, can sit

for less than 6 hours per day, and was limited in her ability to push/pull.   [R. 428.]

Additionally, Dr. Dunovant indicated Plaintiff was limited to frequent stooping; occasional

climbing, balancing, stooping, kneeling, and crawling; and somewhere between frequent

an occasional crouching.   [*Id.*]  Dr. Dunovant also indicated Plaintiff was unable to tolerate

heights but could tolerate some humidity and vibrations.   [*Id.*]

**Analysis**

After considering the entire record, the Court cannot conclude that substantial

evidence supports the ALJ's finding that Plaintiff's impairments do not significantly limit at

least some of her basic work-related activities.   First, the ALJ never addresses the physical

limitations complained of by Plaintiff or addressed by Dr. Dunovant in his RFC

assessment.  Consistent with SSR 85-28, a determination that an impairment is not severe

requires a careful evaluation of the medical findings which describe the impairment and an

informed judgment about its limiting effect on the individual's physical and mental abilities

to perform basic work activities; thus, an assessment of function is inherent in the medical

evaluation process itself.   No such assessment was made by the ALJ in this instance.

Second, while the ALJ considered Plaintiff's impairments individually, the Court is

unable to determine if the ALJ considered whether Plaintiff's impairments, when

considered in combination, would have no more than a minimal effect on her ability to

work.  As previously stated, under 20 C.F.R. §§ 404.1523 and 416.923, when assessing

the severity of a claimant's impairments, the adjudicator must consider the combined effect

of those impairments on the person's ability to function.  A claim may be denied at Step 2

only if the evidence shows that the claimant's impairments, when considered in

combination, are not medically severe, i.e., do not have more than a minimal effect on the

21

person's physical or mental ability to perform basic work activities.  If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

Finally, the Court declines to read into Step 2 the criteria and guidelines taken from other stages of the sequential evaluation and ignore the remedial purposes of the Act and its liberal interpretation.  "Ordinarily [, establishing an impairment is severe enough to significantly limit the claimant's physical or mental ability to do basic work activities] is not a difficult hurdle for the claimant to clear." *Albright*, 174 F.3d at 474 n.1.  Considering the evidence of record, the Court cannot find substantial evidence supports the ALJ's determination that Plaintiff's impairments are not severe under the de minimis standard applied at Step 2.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for further administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.

August 16, 2013                                    **s/Jacquelyn D. Austin**

                                                   Jacquelyn D. Austin

                                                   United States Magistrate Judge